Filed 12/30/25  P. v. Walker CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C101593 |
| Plaintiff and Respondent, | (Super. Ct. No. 21FE010505) |
| v. | |
| RONALD WALKER, | |
| Defendant and Appellant. | |

Defendant Ronald Walker pled no contest to stalking in violation of a restraining order with one prior strike conviction.  On appeal, defendant argues the trial court erred by denying his motion for mental health diversion under Penal Code section 1001.36 by finding there was an unreasonable risk he would commit a super strike offense.[1]  We affirm.

---

[1] Further undesignated statutory references are to the Penal Code.

1

# I. BACKGROUND

After J. Doe served defendant with a domestic violence temporary restraining order, he continued to harass and follow her. He sent her over 92 text messages which included threats. As a result of these threats, Doe feared for her life. Defendant was charged with stalking Doe in violation of a restraining order (§ 646.9, subd. (b)). The information also alleged defendant had two prior strike convictions for robbery (§ 211), sustained in 1995 and 2003.

## A.     *Background*

Defendant has a history of mental illness and substance abuse, often using drugs to cope with his mental health issues. He has a lengthy criminal history including petty theft, larceny, burglary, robbery, assault with a deadly weapon in 2009 when he stabbed his brother in the head, and assault with a deadly weapon in 2015 when he drove a car at two workers outside a Home Depot store.

## B.     *Domestic Violence Temporary Restraining Order*

In March 2021, victim Jennifer Doe filed an application for a domestic violence restraining order against defendant, whom she previously dated. Doe stated that defendant waited outside her home every night and on one occasion followed her aunt to Doe's workplace, leading her aunt to call the police. Doe stated that defendant was "currently back on meth" and that she had called the police a few times before and they had told her to get a restraining order, but he said, "that paper won't stop him." Doe also wrote that defendant knew how to avoid being seen on security cameras and that defendant had sent her numerous text messages over the prior months, including the following:

"Let everyone your [*sic*] in contact know to be ready when they're with your ass."

"And it'll happen when your ass least expects it . . . I want uou [*sic*] to feel comfortable for a ehile [*sic*]."

"Your [*sic*] gonna wish you never did this to me."

"You might as well quit [the store Doe was working at] because [*sic*] gonna be there every day you work . . . from the time you clock on til you get off them [*sic*] I'll follow you home and camp put [*sic*] in front of your nouse [*sic*]."

"I'm [*sic*] got a little friend with me at all times too . . . yeah that's right."[2]

"I'm prepared to do life!!!  Or die!!  What you prepared for [J. Doe] and what's he prepared for .???"

"You won't be happy . . . if it's the very last thing I do on this earth I'll make sure before I go either to prison or the grave your ass will always be miserable."

"It's to [*sic*] fucking late now I don't want that closure anymore . . . I only want you to fucking siluffer [*sic*]."

"It takesv [*sic*] alot [*sic*] for me to really hate somebody and you are fucking doing it . . . I can't wait to get ahold [*sic*] of your ass!!!  We're gonna see how good you fight bitch."

"Hide now before I get there because I'm coming . . . let boyfriend know I'm right outside if he chooses to get brave."

"I'm so close to you I can almost smell your ass."

On March 24, 2021, a court entered a domestic violence temporary restraining order barring defendant from contact with Doe, and a police officer served the order on defendant the same day.  On May 24, 2021, after a hearing, the court entered a domestic violence restraining order barring any contact for five years.

C.    *Current Offense*

Upon being served with the temporary restraining order, defendant told the officer that he would probably violate the order.  He then proceeded to text Doe six times over

---

[2] The victim included a handwritten note under this text stating: " 'I feel he is suggesting towards a weapon.' "

the next two days, saying, among other things, that one hundred yards, the distance mandated in the stay away order, "was not that far."

Less than two months later, Doe contacted law enforcement to report that defendant had sent her at least 92 text messages after being served with the temporary restraining order. Defendant's texts made Doe visibly upset and fearful because of defendant's past abuse, and she was afraid the behavior was going to escalate and lead to additional physical harm. These texts included the following:

" 'I'm not going to quit on you. Let it be known I'm coming and I'm coming for you baby.' "

" 'It's out of my hands. If I survive all this, I'll be going straight to your house.' "

" 'They better kill me good, [Doe]. You better make sure they understand that.' "

" 'If I get locked up, you know I'll find you when I get out.' "

" 'Hey, baby, you do know that ignoring me and restraining orders and the such only motivate me and encourage me to be more persistent so, yeah, keep them coming LOL.' "

D.      *Application for Mental Health Diversion*

Defendant moved for mental health diversion in December 2023. In his request, he asserted that he had been diagnosed with mental disorders and drug and alcohol abuse, and these disorders were a significant factor in the commission of the charged offense. Defendant claimed that the symptoms that led to his criminal behavior would not occur if he were receiving treatment and support, including medication and counseling, which he would receive through a diversion program. He stated he understood and consented to the requirements of diversion.

Defendant further argued that he did not pose an unreasonable risk of danger to public safety if treated in the community. He claimed that he was unlikely to commit a super strike offense because he would be participating in treatment, and the incentives of staying out of custody and his own mental health and well-being would keep him

4

compliant with the terms and conditions of diversion. Defendant further claimed that he had been compliant with his medications, was stable since being in custody, and he had participated in rehabilitation programs in the past, most recently over 10 years prior.

Defendant attached a behavioral health services assessment in support of his motion. The assessment reported that defendant had "[t]houghts of harm without a plan" and "[n]o recent history of elevated risk factors, yet [he did] have a history of suicide attempts, violence, or threats, which may be associated with a disorganized mental state or substance abuse." The assessment further stated that defendant had symptoms indicative of "Schizoaffective disorder, Depressive type" and "Amphetamine-type substance use disorder, severe, in sustained remission, in a controlled environment." The report ultimately recommended defendant be provided with residential treatment for "moderate-intensity specialty mental health services" at a facility in Elk Grove.

The People opposed defendant's motion, arguing that he posed an unreasonable risk of danger to public safety. The People noted the threatening nature of several of the texts he sent to the victim, including ones attached to the victim's application for a restraining order, and pointed to his conviction for assault with a deadly weapon in 2009 after he stabbed his brother in the head during a fight, and his prior burglary convictions.

The People also emphasized that defendant texted the victim multiple times the same day he was served with a no contact order, including 20 minutes after being served, indicating he would not obey the order, and continued to contact her and told her the order only encouraged him to continue contacting her. The People also noted defendant's substance abuse issues, including his admission he had used methamphetamine since he was 22 years old and smoked it daily " 'as often as possible.' " They argued that this history, and the failure of defendant's past participation in residential treatment, most recently in 2012, showed that he was not able to control his behavior and was not safe to be treated in the community.

5

At the hearing on the motion, defendant acknowledged stabbing his brother in 2009 and committing a robbery in 2015. However, he claimed that he never made any direct threat to the victim in this case and never used violence or force, nor attempted to do so, against this victim. He acknowledged being near the victim but claimed he never attempted vandalism or destruction of property against her and had no history of domestic violence or history of super strikes. He argued that his texts to the victim were largely nonsensical and showed his manic behavior indicative of someone in a mental crisis, consistent with his then-untreated schizoaffective disorder. He further claimed that he had not contacted or attempted to contact the victim since being in custody, which was consistent with him being treated and medicated by jail psychiatric services during that time.

The court explained that it had read and considered defendant's motion, the People's opposition, and all the attachments. The court noted defendant's 2009 conviction for assault with a deadly weapon, based on stabbing his brother in the head, and defendant's prior robbery convictions. The court also noted one text message defendant sent to the victim stating, "I'm prepared to do life!!! Or die!! What you prepared for [J. Doe] and what's he prepared for?" and an email to the victim stating, "You won't be happy . . . if it's the very last thing I do on this earth I'll make sure before I go either to prison or the grave your ass will always be miserable." The court also noted that there were other messages with "the same theme and tone." The court found that even if defendant was treated in the community, he presented an unreasonable risk of committing a super strike, and that he was not suitable for mental health diversion "based on his prior statements," and therefore denied defendant's request for diversion.

In July 2024, defendant pled no contest to stalking in violation of a restraining order (§ 646.9, subd. (b)) and admitted a prior strike conviction. Pursuant to a plea agreement, the trial court sentenced defendant to the low term of two years, doubled for a prior strike. The trial court also issued a 10-year criminal protective order.

6

After application of defendant's actual time in custody and good time and work time credits, defendant's sentence was deemed to have been served, and he was released from custody.

Defendant filed a timely notice of appeal and obtained a certificate of probable cause.

## II.  DISCUSSION

Defendant argues the trial court abused its discretion denying mental health diversion, because substantial evidence does not support the trial court's finding that he posed an unreasonable risk to public safety.  We disagree.

"[S]ection 1001.36, subdivision (b) provides that a defendant is eligible for pretrial diversion if two criteria are met.  First, the defendant has been diagnosed with a mental disorder, such as the one with which defendant was diagnosed, within the last five years by a qualified mental health expert.  [Citation.]  Second, the 'defendant's mental disorder was a significant factor in the commission of the charged offense.'  [Citation.]  'If the defendant has been diagnosed with a mental disorder, the court shall find that the defendant's mental disorder was a significant factor in the commission of the offense unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense.' "
(*People v. Graham* (2024) 102 Cal.App.5th 787, 795 (*Graham*).)

"If a defendant meets these eligibility requirements, the court also must find that the defendant is suitable for pretrial diversion based on satisfaction of the following criteria:  '(1) In the opinion of a qualified mental health expert, the defendant's symptoms of the mental disorder causing, contributing to, or motivating the criminal behavior would respond to mental health treatment.  [¶]  (2) The defendant consents to diversion and waives the defendant's right to a speedy trial . . . .  [¶]  (3) The defendant agrees to comply with treatment as a condition of diversion . . . .  [¶]  [and] (4) The defendant will

7

not pose an unreasonable risk of danger to public safety, as defined in Section 1170.18, if treated in the community.' " (*Graham, supra*, 102 Cal.App.5th at p. 795.)

Only the last of these criteria is at issue here. An "unreasonable risk of danger" to public safety means " 'an unreasonable risk that the petitioner will commit a new violent felony' within the meaning of section 667, subdivision (e)(2)(C)(iv)." (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1149 (*Whitmill*).) Under the statute, the new violent felonies that may be relevant here are any homicide offense, including attempted homicide. (§§ 1001.36, subd. (d)(1), 1170.18, subd. (c), 667, subd. (e)(2)(C)(iv); see also *People v. Moine* (2021) 62 Cal.App.5th 440, 449 (*Moine*).) In making this decision, the trial court "may consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's treatment plan, the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate." (§ 1001.36, subd. (c)(4).)

We review a trial court's ruling on a motion for pretrial mental health diversion for abuse of discretion. (*Graham, supra*, 102 Cal.App.5th at p. 795.) "A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence." (*Moine, supra*, 62 Cal.App.5th at p. 449.)

Applying this standard, we conclude that the trial court did not abuse its discretion in determining that defendant posed an unreasonable risk of committing a super strike offense. Defendant had prior convictions for stabbing his brother in the head and two robberies. In addition, he sent Doe numerous threatening text messages, including several just minutes after he was served with a restraining order, and he explicitly told a law enforcement officer he would not comply with the restraining order. He also had a significant history of substance abuse and unsuccessful treatment, which increased his dangerousness. Defendant's violence and criminal history, current charged offenses, substance abuse history, and treatment failures provided substantial evidence that

8

defendant posed an unreasonable risk of committing a super strike. While the mental health assessment in this case recommended treatment in a community setting, the trial court was not bound by this recommendation. Although experts may provide their opinions, "the fact finder decides what weight to give those opinions." (*In re Scott* (2003) 29 Cal.4th 783, 823.)

Defendant contends that the facts of this case are similar to those in *Moine*, *Whitmill*, and *Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882 (*Sarmiento*), where the appellate courts concluded the trial courts abused their discretion in denying mental health diversion, primarily based on findings that those defendants posed an unreasonable risk to public safety. (*Moine, supra*, 62 Cal.App.5th at p. 451; *Whitmill, supra*, 86 Cal.App.5th at p. 1150; *Sarmiento, supra*, at p. 897.) While these cases provide us with guidance, "[w]hen we decide issues of sufficiency of evidence, comparison with other cases is of limited utility, since each case necessarily depends on its own facts." (*People v. Thomas* (1992) 2 Cal.4th 489, 516.)

Indeed, defendant's stabbing of his brother in the head, robberies, and numerous threatening texts to the victim before and after being served with a restraining order do not demonstrate a single episode of negligent violence coupled by an immediate retreat and cooperation with law enforcement as reflected in *Whitmill, supra*, 86 Cal.App.5th at pages 1142-1143 and 1151.

Nor are defendant's actions here the equivalent of the threat accompanied by an immediate and profuse apology reflected in *Moine, supra*, 62 Cal.App.5th at pages 444-445 and 450-451. Further, in *Moine*, the defendant was released on bond for over two years before diversion was denied. (*Id*. at p. 451.) Here, the trial court did not release defendant until after his no contest plea, and thus did not necessarily determine he was not an unreasonable threat to the public.

Finally, the *Sarmiento* case is inapposite. Here, unlike *Sarmiento, supra*, 98 Cal.App.5th at pages 893-895 and 897-898, the trial court did not deny diversion based

9

on defendant's prior failures in drug treatment. Rather, the trial court found that defendant posed an unreasonable risk of committing a super strike.

Defendant asks us to consider evidence not presented to the trial court at the time it denied defendant's motion for diversion, specifically the trial court's sentence of time served, as evidence that he was not an unreasonable danger to the public. Our review, however, is limited to the evidence before the trial court at the time the challenged decision was made. (*People v. Hartsch* (2010) 49 Cal.4th 472, 491.) Having already concluded the trial court did not abuse its discretion in finding defendant presented an unreasonable risk of committing a super strike, the fact that the trial court approved his plea deal providing for his immediate release six months after denying his request for pretrial diversion is not a reason for this court to supplant the trial court's determination. (See, e.g., *People v. Brown* (2024) 101 Cal.App.5th 113, 123-124 [existence of some evidence in record supporting a contrary dangerousness inference is an insufficient basis to overturn that finding].)

### III. DISPOSITION

The judgment is affirmed.

/S/

_____

RENNER, Acting P. J.

We concur:

/S/

_____

MESIWALA, J.

/S/

_____

FEINBERG, J.

10